```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,                       :
                                                :
          v.                                    :     MEMORANDUM & ORDER
                                                :     17-CR-709 (WFK)
JACOB CHUBALASHVILI,                            :
                                                :
                         Defendant.             :
----------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On June 8, 2022, Jacob Chubalashvili ("Defendant") pled guilty to one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), and one count of Using and Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 117 months of imprisonment, to be followed by 2 years of supervised release, and a $200.00 mandatory special assessment.

**DISCUSSION**

**I.     Background**

On August 13, 2017, Defendant Chubalashvili and his co-Defendant Phillip Gonzalez committed a violent home invasion robbery at an apartment on Norman Street in Queens, New York (the "Norman Street Residence"). Presentence Investigation Report ("PSR"), ECF No. 141, ¶ 3. During the gunpoint robbery, Defendants stole at least $1,300.00 in United States currency, as well as an Audi sedan and narcotics from two victims ("Victim 1" and "Victim 2"). *Id.* During a subsequent interview with law enforcement, Victim 1 admitted to selling illegal narcotics in the past and also reported the following details regarding the instant robbery. *Id.*

On the evening of August 13, 2017, Defendant and co-Defendant Gonzalez approached Victim 1 outside his apartment building and asked Victim 1 for marijuana. *Id.* ¶ 5. Defendant then displayed a firearm while co-Defendant Gonzalez restrained Victim 1. *Id.* Defendant entered

the building and proceeded toward the Norman Street Residence, at which point Victim 2 came out to the hallway and began to shout at him. *Id.* Defendant then pointed the firearm at Victim 2 and forced her into the apartment. *Id.* Upon entering the dwelling, Defendant pointed the firearm at a minor child. *Id.* Defendant then told Victim 2: "Give me what you got! Give me those keys!" *Id.* Victim 2 gave Defendant approximately $1,300.00 in cash and the keys to an Audi sedan. *Id.* Defendant also stole an unknown quantity of illegal narcotics from the apartment. *Id.* Defendant exited the apartment at the same time Victim 1 was approaching the Norman Street Residence after having broken free from co-Defendant Gonzalez. *Id.* Defendant pointed the firearm at Victim 1, told Victim 1 to stay in place, then exited the building and entered a vehicle waiting for him outside. *Id.* The vehicle drove down the block, and an unidentified male exited the car. *Id.* That same individual entered the aforementioned Audi, which was parked on the street, and both cars fled the scene. *Id.*

The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and the New York City Police Department ("NYPD") initiated an investigation into the robbery. *Id.* ¶ 2. Defendant was identified on a surveillance video recording that captured the robbery after agents compared the video with images of Defendant from law enforcement databases. *Id.* ¶ 6. Historical cell-site information also revealed cellular telephone numbers associated with both defendants were in close proximity to the Norman Street Residence at the same time as the robbery. *Id.* ¶ 7.

On November 27, 2017, Defendant was charged by complaint in the Eastern District of New York with one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). *Id.* ¶ 8. Defendant turned himself in on December 5, 2017. *Id.* Defendant was later indicted on one count of Hobbs Act Robbery Conspiracy, in violation of 18 U.S.C. § 1951(a), one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), and one count of Possessing and

Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(A)(ii).  Indictment, ECF No. 12.  On June 8, 2022, Defendant pled guilty to one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), and one count of Using and Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c).  PSR ¶ 1; Plea Agreement, ECF No. 135.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## II.   Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case.  A sentencing court must also consider the Sentencing Guidelines in addition to the seven factors listed in 18 U.S.C. § 3553(a) when making a sentencing decision. The Court has done so in this case.

The Sentencing Guidelines are merely advisory in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 264 (2005).  Nevertheless, the Guidelines range is the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).  "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.*  In this regard, the Guidelines provide "the framework for sentencing" and "anchor… the district court's discretion." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016) (internal reference and quotation marks omitted).

If and when a district court imposes a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and …the specific reason for the imposition of a sentence different from that described" in the

3

Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.* "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a). It addresses each in turn consistent with *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005).

### III. Analysis

**The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 1. Family and Personal Background

Defendant was born on February 19, 1991 in Queens, New York. PSR ¶ 42. He is the younger of two children born to the marital union of Mirabi and Magnoli Chubalashvili. *Id.* Unfortunately, Defendant's father, a former wholesale diamond and clothing distributor, died in April 2022 from COVID-related complications. *Id.* Defendant's mother is a home attendant in good health, who remains supportive of Defendant despite the instant conviction. *Id.* Defendant's sister, Ana Chubalashivili, who works as a child psychologist, also remains supportive of Defendant. *Id.* ¶ 43.

Defendant grew up in a middle-income household and was raised in a "nurturing home environment." *Id.* ¶ 44. Defendant reported he was occasionally disciplined by his mother as a child, which involved her hitting him with her hands. *Id.* However, Defendant reported he did

not consider this abuse, but rather a form of "tough love." *Id.* Defendant primarily resided with his parents in Queens, except between the ages of 14 and 17 years old, during which time he traveled with his father to Israel and lived with extended family. *Id.* Prior to the instant offense, Defendant resided with his mother in Forest Hills, Queens. *Id.* ¶ 46. Defendant reported he is currently single, has never married, and has no children. *Id.* ¶ 45.

### 2. Educational and Employment History

Between 2008 and 2009, Defendant attended Forest Hills High School in Queens, New York. *Id.* ¶ 54. There, he enrolled in special education classes due to his attention deficit hyperactivity disorder ("ADHD") diagnosis. *Id.* Defendant did not advance beyond ninth grade. *Id.* Before 2008, Defendant lived in Israel, where he attended secondary school. *Id.*

Defendant's most recent period of employment was between 2016 and 2017, when he worked as a salesperson at Leon Diamonds in Manhattan, New York, during which he made $1,600.00 in gross earnings per month. *Id.* ¶ 55. Defendant has not been employed since this position, as he has been incarcerated for the instant offense since December 5, 2017. *Id.* Nor did Defendant work before 2016, as he was incarcerated in upstate New York between 2008 and 2016 in connection with a prior offense. *Id.*

### 3. Prior Convictions

Defendant's criminal history is extensive. *Id.* ¶¶ 32-35. Defendant incurred his first arrest in 2008, at the age of 17, for robbery in the second degree. *Id.* ¶ 32. While awaiting trial in connection with that case, Defendant was arrested after he drove a stolen vehicle without a driver's license under the influence of narcotics, lost consciousness, ran a red light at high speed, and killed two people. *Id.* ¶ 33. He was subsequently charged and convicted of vehicular homicide in the first degree. *Id.* While in custody for that offense, Defendant incurred sanctions for 15 infractions

involving assault on inmates, drug and alcohol use, weapon possession, disobeying orders, and gang activity. *Id.*

Defendant was released in 2016 but was arrested and convicted of menacing and disorderly conduct offenses later in 2016 and in 2017, respectively. *Id.* ¶¶ 34-35. Defendant was also arrested for speeding and driving without a license in 2017, though neither of these arrests resulted in convictions. *Id.* ¶¶ 39-40. Finally, the PSR notes Defendant assaulted a fellow inmate on August 24, 2022, while housed at the Essex County Jail. *Id.* ¶ 47. During this incident, Defendant reportedly struck another inmate in the face with a metal object and was placed in the Special Housing Unit as a result. *Id.*

### 4. Medical and Mental Health

With respect to his physical health, Defendant was diagnosed with a stomach ulcer in 2016, but has since fully recovered. *Id.* ¶ 49. Defendant also reported suffering from a nail fungal infection, but has not seen a doctor for this condition. *Id.*

Defendant also reported mental health struggles. Defendant reported he was treated by a psychiatrist between ages 8 and 10 for depression-related symptoms, which Defendant attributes to the untimely death of his grandfather, with whom he was particularly close. *Id.* ¶ 50; Def. Mem. at 1. Defendant also reported he had difficulty controlling his temper as an adolescent, and believes he was diagnosed with ADHD, schizophrenia, and bipolar disorder as a teenager, but could not recall details regarding his treatment during this period. PSR ¶ 50. Defendant was prescribed medication for ADHD and bipolar disorder while incarcerated at Rikers Island for a prior offense. *Id.* Defendant's mother confirmed Defendant has a history of ADHD, and she noted he underwent counseling for a period of time when he was approximately 7 years old. *Id.* ¶ 51.

6

5.     **Substance Abuse**

Defendant reported that except for his periods of incarceration, he smoked marijuana daily beginning at the age of 13. *Id.* ¶ 52. Defendant also reported he experimented with both powder cocaine and ecstasy at age 17. *Id.* Further, as previously mentioned, Defendant was under the influence of narcotics when he ran a red light and killed two people in 2008. *Id.* As Defense counsel explains, that at the time of the accident, Defendant "was suffering from a painful dental condition and wrongfully self-medicated with medication he found in the house," which led him to lose consciousness while driving. Def. Mem. at 2.

6.     **Nature and Circumstances of the Offense**

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* at Section I.

**B.     The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's violent conduct in the instant case is serious, and there is a significant need to deter any future criminal conduct. The Government argues the Court should impose a "substantial sentence" as Defendant violently robbed a drug dealer, thereby "targeting a person whom [Defendant and his co-Defendant] believed would be unwilling to report" the robbery. Gov. Mem.

at 4. The Government emphasizes the robbery "was not the first time that the Defendant displayed a callous disregard for human life," referencing Defendant's 2009 vehicular manslaughter conviction. *Id.* Probation makes similar arguments, claiming Defendant's conduct underlying the instant offense, in conjunction with his criminal history, shows "his behavior has been wholly incorrigible." Probation's Recommendation, ECF No. 141-1, at 2. Probation also argues a significant period of incarceration is appropriate for "public safety, punishment, general and individual deterrence purposes." *Id.* at 3. While defense counsel does not deny the seriousness of Defendant's conduct, the defense argues Defendant's life "is moving forward in the right direction" and emphasizes Defendant "promises to continue his struggle against quick and thoughtless action." Def. Mem. at 10.

      C.      **The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), and one count of Using and Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c). Defendant faces various penalties for committing these offenses, including terms of imprisonment and supervised release in addition to fines and a special assessment.

With respect to the Hobbs Act Robbery charge, Defendant faces a maximum term of imprisonment of twenty years, and no minimum term of imprisonment. 18 U.S.C. § 1951(a). Pursuant to 18 U.S.C. §§ 3583(b) and (e), Defendant faces a term of supervised release of not more than three years. Further, the Court may impose a fine of not more than $250,000.00 or twice the gross gain or twice the gross loss, whichever is greater, pursuant to 18 U.S.C. § 3571(b).

Defendant also faces mandatory restitution in the full amount of each victim's losses as determined by the Court. 18 U.S.C. §§ 3663A and 3664. The Court is also required to impose a mandatory special assessment of $100.00 per count in accordance with 18 U.S.C. § 3013.

For the charge of Using and Brandishing a Firearm During a Crime of Violence, Defendant faces a maximum term of life imprisonment and a minimum term of imprisonment of seven years. *See United States v. Johnson*, 507 F.3d 793, 798-99 (2d Cir. 2007); 18 U.S.C. § 924(c)(1)(A)(ii). Pursuant to 18 U.S.C. §§ 3583(b) and (e), Defendant faces a maximum term of five years of supervised release. Defendant also faces a maximum fine of $250,000.00. 18 U.S.C. § 3571(b)(3). Finally, the Court is also required to impose a mandatory special assessment of $100.00 per count in accordance with 18 U.S.C. § 3013.

In addition to these penalties, Defendant also faces various collateral consequences as a result of this felony conviction. *See* PSR ¶ 71.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The parties disagree as to the appropriate Guidelines calculation. The Government agrees with the calculation as set forth by Probation in the PSR, which proceeds as follows:

With respect to Defendant's conviction for Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), the applicable guideline is USSG §2B3.1. PSR ¶ 17. That section has a base offense level of 20. *Id.* Two levels are added pursuant to USSG §2B3.1(b)(4)(B) since a victim was physically restrained to facilitate commission of the offense. *Id.* ¶ 18. Pursuant to USSG §2B3.1(b)(6), another level is added because the instant offense involved the taking of a controlled

substance. *Id.* ¶ 19. One more level is added per USSG §2B3.1(b)(7)(A), as the estimated loss from the robbery is greater than $20,000.00 but less than $95,000.00. *Id.* ¶ 20. Finally, two more levels are added pursuant to USSG §3A1.1(b)(1), as Defendant knew or should have known a victim of the offense was a vulnerable victim—that is, a minor child. *Id.* ¶ 21. The adjusted offense level for the Hobbs Act Robbery count is therefore 26.

With respect to Defendant's conviction for Using and Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c), the applicable guideline is USSG §2K2.4. *Id.* ¶ 25. The guideline sentence is the term of imprisonment required by statute—that is, at least seven years custody. *Id.* Chapters Three and Four of the Guidelines—which address adjustments and criminal history, respectively—do not apply to this count of conviction. *Id.* Further, this count is excluded from the grouping rules governing USSG § 3D1.2. *Id.* ¶ 26.

In sum, Probation calculates Defendant's total offense level to be 23, as two levels are removed since Defendant clearly demonstrated acceptance of responsibility and one more level is removed as the Government was notified in a timely manner of Defendant's intention to plead guilty. *Id.* ¶¶ 28-30.

As the Court has discussed, Defendant's criminal history dates back to his teenage years. Considering this history, Probation calculates Defendant's prior convictions result in a criminal history score of four. *Id.* ¶ 36. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of four establishes a criminal history category of III. *Id.*

A total adjusted offense level of 23 combined with a criminal history category of III results in a recommended Guidelines range of imprisonment of between 57 and 71 months on the Hobbs Act Robbery conviction. *Id.* ¶ 59. As required by statute, the Court must impose a consecutive term of at least seven years—that is, 84 months—on the count of Using and Brandishing a Firearm

During a Crime of Violence. *Id.* Probation therefore calculates an effective Guidelines range of 141 to 155 months' custody. *Id.*

Given this calculation, Probation recommends a term of imprisonment of 141 months, which is at the low end of Probation's calculated Guidelines range. Probation's Recommendation at 3. Probation argues this term of imprisonment is appropriate based on the history and characteristics of Defendant and the need for punishment and deterrence in this case. *Id.*

While the Government agrees with the Guidelines calculation as set forth in the PSR, it disagrees with Probation's recommended sentence. Specifically, the Government argues for a sentence within the range of 117 and 125 months' imprisonment, which corresponds to the Guidelines range estimated in Defendant's plea agreement. *See* Gov. Mem. at 1; ECF No. 135 at 4. The Government explains the discrepancy between Probation's calculation and the Government's recommendation as follows:

> [I]n the plea agreement, the Government regrettably overlooked the enhancements for the use of restraint under 2B3.1(b)(4)(B), the fact that the robbery was designed to steal drugs under § 2B3.1(b)(6), and the presence of a vulnerable victim under § 3A1.1(b)(1), but agrees with the Probation Department that those enhancements apply in this case. Notwithstanding the foregoing, the government respectfully submits that the Guidelines calculation in the plea agreement, which contemplates a sentencing range of 117-125 months' imprisonment, results in an appropriate range of imprisonment for the Court to consider for the defendant. Gov. Mem. at 3.

In particular, the Government argues a sentence within the range of 117 and 125 months' custody appropriate given Defendant's "significant health challenges." *Id.* at 4.

11

Unlike the Government, defense counsel disagrees with the Guidelines calculation set forth in the PSR, as defense counsel argues the enhancements related to the use of restraint, the taking of a controlled substance, and the targeting of a vulnerable victim should not be applied. Def. Mem. at 4; PSR Addendum, ECF No. 143, at 1. In particular, defense counsel argues the use of restraint enhancement should not apply because co-Defendant Gonzalez, rather than this Defendant, restrained the victim on his own accord, and it was not a "typical" restraint where movement was restrained by tape, rope, or other materials. Def. Mem. at 4. Moreover, defense counsel argues the enhancement that adds a level because the crime involved the taking of a controlled substance should not be applied, because marijuana is "now legal in New York." PSR Addendum at 1. Finally, defense counsel argues the vulnerable victim adjustment is inapplicable because "the child in question was not the intended target or victim and it was not anticipated that he would be at the scene." Def. Mem. at 4. Given these objections, defense counsel calculates the appropriate Guidelines range as 117 to 125 months' imprisonment, as reflected in the plea agreement. *Id.* at 3.

However, the defense requests the Court impose a sentence "far below" that Guidelines range. *Id.* at 6, 10. The defense argues the harsh conditions Defendant has endured at the Metropolitan Detention Center ("MDC") since he entered federal custody on December 5, 2017 are a mitigating factor weighing in favor of a lenient sentence. *Id.* at 7-9. In particular, defense counsel highlights the January 2019 electricity and heat outage at the MDC, which counsel describes as "cruel, frightening, and chaotic," and the strict COVID-19 related lockdown measures at the facility. *Id.* at 7-9.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statement here. Finding none on its own, the Court proceeds to the next 3553 factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires this Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court has premised its sentence around the nature and characteristics of *this* Defendant and of the instant crime of conviction. The Court has carefully considered the sentencing options written into the relevant statutes and recommended by the Guidelines. In doing so, the Court has ensured the sentence it now imposes will avoid unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires this Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Pursuant to 18 U.S.C. § 3663A, restitution shall be ordered in this case. As previously noted by the Court, a total of $1,300.00 in cash and an Audi sedan were stolen during the robbery. Since the restitution amount is potentially subject to increase, per 18 U.S.C. § 3664(d)(5), the Court

may hold an evidentiary hearing within 90 days after sentencing to determine the specific amount owed to the victims.

## IV. CONCLUSION

For the reasons set forth above, the Court determines a sentence of 117 months of imprisonment to be followed by 2 years of supervised release with special conditions and a $200.00 mandatory special assessment is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report and Addendum, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 8, 2023
Brooklyn, New York